UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| KENNETH L. PATTON, | : | Bankruptcy No. 07-13996DWS |
| | : | |
| Debtor. | : | |

# OPINION

**BY: DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court are the (1) Debtor's Objection to Claim ("Claim Objection") filed by Chase Home Finance LLC ("Chase" and "Chase Claim"); and (2) Chapter 13 Trustee's Motion to Dismiss ("Dismissal Motion") on the grounds of plan infeasibility.[1] This Chapter 13 case is the third such case filed by Debtor. The history as revealed in the dockets of this Court as to which I take judicial notice[2] evidences an initial case, 05-13986,

---

[1] Confirmation was also contested by Chase and the Township of Caln ("Caln") which understandably did not appear given the $538.09 secured claim it asserts. That matter has been deferred pending resolution of the Dismissal Motion. Also pending before the Court is Debtor's Objection to Certificate of Default. That contested matter is addressed in a separate memorandum of even date herewith.

[2] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991). While a court may not take judicial notice *sua sponte* of facts contained in the debtor's file that are disputed, In re Augenbaugh, 125 F.2d 887 (3d Cir. 1942), it may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority."
(continued...)

filed on March 24, 2005 and dismissed on December 1, 2005 for failure to make trustee payments. Chase received relief from the automatic stay in that case after the Debtor's default under a stipulation. On April 19, 2006, case number 2, 06-11590 (the "06 Case"), was filed to stop the inevitable resulting sheriff sale. It too was dismissed on March 16, 2007 after multiple protracted evidentiary hearings, including an inconsequential but lengthy contested matter over Chase's prior proof claim which is now repeated herein. Following the dismissal, Debtor's counsel filed the ubiquitous motion for reconsideration which was denied by opinion dated May 2, 2007. Doc. No. 84. Undaunted, this case ("07 Case") was filed on July 11, 2007 to stay a rescheduled sheriff sale.

After the usual bumps in the road toward case compliance with accommodations by the Chapter 13 trustee in the form of multiple continuances of his motions to dismiss, an evidentiary hearing on the Claim Objection and Dismissal Motion was held on May 22, 2008. The Trustee's sole remaining issue[3] is whether the plan is feasible since the Chase pre-petition arrears claim ("Arrears Claim") has been filed in the amount of $35,492.52 and the plan is funded for $37,987.50[4] to pay attorneys' fees, Chase, the second mortgagee Pennsylvania Housing Manhattan Bank and Caln as well as the Trustee's commission.

---

(...continued)
In re Indian Palms Assoc., 61 F.3d 197, 205 (3d Cir. 1995) (*citing* Fed.R.Evid. 201(f) advisory committee note (1972 proposed rules). Moreover, "factual assertions in pleadings, which have not been superceded by amended pleadings, are judicial admissions against the party that made them. Larson v. Gross Bank, 204 B.R. 500, 502 (W.D. Tex. 1996) (statements in schedules). See also In re Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995) (same); In re Leonard, 151 B.R. 639 (Bankr. N.D.N.Y. 1992) (same).

[3] The documentary deficiencies and the missed § 341 meeting have been resolved.

[4] Plan payments have been increased from $150/month to $600/ month in this case, and there is no delinquency after 10 months given the operation of a consensual wage order. Doc. No. 41.

As the Debtor's claim objection is therefore dispositive of the Dismissal Motion, I turn to that matter first.

**BACKGROUND**

In the 2006 Case, Chase asserted an arrearage claim of $21,664.34[5] as of April 19, 2006 which I was able to sustain up to a proven amount of $11,580.34 representing five missed payments. In re Patton, 2007 WL 853742 (Bankr. E.D. Pa. Mar. 16, 2007) ("Patton I").[6] Since the Debtor's Chapter 13 plan provided for 36 monthly payments of $150 or plan funding of $5,400, it was apparent that there was a significant insufficiency to adequately fund the plan. Indeed even increasing the plan term to 60 months (which had not been proposed) made no difference.[7] In the absence of demonstrated the ability to confirm a Chapter 13 plan, the 2006 Case was dismissed.

---

[5] The actual filed claim was $22,792.12 but it was reduced to give debtor credit for a sheriff's refund.

[6] For the purpose of this decision, I accepted the claim as far as late charges, escrow shortage and costs were concerned finding the Debtor had not made any specific challenges to them other than to the sheriff's fees which were not supported by the evidence. With respect to the payment arrears, I included the five missed payments the Debtor admitted and found that when added to the costs, the claim exceeded plan funding. I noted that I found the testimony that Debtor was current in his mortgage and Chapter 13 payments, only missing five prepetition payments to be incredible, based on a short or faulty memory. I stated that "his failure to be truthful with the Court undermined the veracity of his repeated assertion that he is but a mere five months in arrears with Chase, but it was sufficient to put the number of payments at issue and that was Chase, not his burden to prove. Patton I, 2007 WL 853742, at *4 n. 12.

[7] I found the testimony presented by Brenda Morris ("Morris"), Debtor's life partner and financial manager that more than $150 could be dedicated to the plan unpersuasive.

Chase now returns with a new arrearage claim that has grown to $35,492.52 as of July 11, 2007. Compare Exhibit D-1 with Exhibit D-5. Debtor's objection takes the same form it did in the last case: he questions whether all payments have been credited, and how the arrears could have grown since the last case when he has allegedly made all payments, and in the most general terms challenges all the costs as either excessive or not adequately itemized. Exhibit D-2. Once again attached to Chase's proof of claim is a categorical break down of the payment arrears, late charges and costs. However, somewhat more helpful this time around is Debtor's Request for Production of Documents, Exhibit D-8, to which Chase filed a Response attaching various invoices from Chase's bankruptcy counsel, Phelan Hallinan & Schmieg ("PH&S"),[8] and a promise to supply the requested payment history which indeed soon followed. Exhibit D-9; Exhibit M-3.[9]

Morris was examined about the payment history and cost support. While observing that she saw the payment history, she claimed not to understand it. She maintained that the account was only unpaid for the same five months that she admitted having missed in the prior case, contending that she had made every payment (albeit late) since the filing of the 2006 Case. As for costs, she claimed she did not know what they were since she had

---

[8] Chase was also requested to supply time records to support the attorneys' fees charged, but the Response acknowledged none were maintained. Exhibit D-9. This is common practice in the foreclosure industry where compensation for services is usually fixed by an agreed schedule.

[9] Debtor objected to the introduction of this document given the absence of a witness to authenticate it. I admitted it over the objection as evidence that Chase had complied with Debtor's counsel's document demand and for the purpose of establishing that support for Chase's contentions about payment arrears had been provided to Debtor. This record contrasts with the documentary exchange in the 06 Case where there was no evidence of a payment history or the cost invoices having been supplied.

asked and gotten nothing to substantiate them. After being shown the attachment to the Response which provided the back-up requested by her counsel, Morris stated that she had not been shown it. As such, she had not reviewed the invoices supporting the Response and could not agree or disagree with what Chase asserted. On that due diligence, the Debtor maintains a wholesale objection to the Arrears Claim.[10]

**DISCUSSION**

A. Claim Objection

I begin as I did in Patton I recognizing that Bankruptcy Rule of Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure constitutes *prima facie* evidence of the validity and amount of the claim. Amatex Corporation v. Aetna Casualty & Surety Co., et al., 107 B.R. 856, 870 (E.D. Pa. 1989); In re Wall to Wall Sound & Video, Inc., 151 B.R. 700, 701 (Bankr. E.D. Pa. 1993). Even if there is an objection filed to the claim, the evidentiary effect of Rule 3001(f) remains in force. In re Wells, 51 B.R. 563, 566 (Bankr. D. Col. 1985). Chase's Claim has been filed in accordance with applicable rules of procedure and is therefore *prima facie* evidence of the validity and amount of the claim for prepetition arrears, a legal conclusion not challenged by Debtor. Accordingly, Debtor as the objecting party carries the burden of going forward with evidence in support of its objection which must be of probative force equal to that of

---

[10] The only specificity to the objection pertained to the sheriff's sales which Morris contended were two in number, not three as charged. Indeed this was the same objection made in the 06 Case. Her position did not hold up on cross examination in either case as she seemed to concede. There were plainly three sheriff's sales scheduled and charges for each are warranted.

the allegations of the creditor's proof of claim.  Id.  "[T]he objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny International, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). If the objecting party succeeds in overcoming the *prima facie* effect of the proof of claim, the ultimate burden of persuasion then rests on the Claimant. Id. at 174; Wall to Wall Sound, 151 B.R. at 701.  The threshold question then is whether the Debtor has rebutted the *prima facie* effect of the proof of claim.

In the 06 Case, Debtor's generalized objections to the Chases' arrears claim were met with no response by Chase.  While not being convinced that Debtor's payment default was limited to five months, I did not have to quantify the claim further than necessary to adjudicate the motion to dismiss.  See n. 6 supra.  The Debtor's own admission there doomed his cause.  With a presently proposed plan funding of $600 for 60 months (versus $150 for 36 months in the 06 Case), that luxury no longer presents itself.  Chase's Arrears Claim will be liquidated based on the slightly better record I now have before me. At bottom, the answer resides in the accepted burdens of proof identified above. Application of these principals compels me to overrule the Objection for the most part.

Payment arrears - Upon review of the payment history produced by Chase, updated as of February 20, 2008, I note it contains a schedule from the initial payment on December 11, 1998 through the date of its preparation on February 20, 2008.  In addition to the actual date and amount of payments received, it also reflects the contractual date paid. By setting forth the dates actual payments were made as well as the date they were applied, the history is reconcilable to the Debtor's own payment records.  This presentation obviates

the understandable confusion from notices of default that claim current payments were not made when the debtor knows he wrote a check and fails to understand that it was applied to a prior month in arrears.

Neither Debtor, Morris nor counsel has made any effort to reconcile this document with Debtor's own records. When questioned, Morris stated that she was aware of it but had not reviewed it. As the handler of the couple's finances, she maintains her ignorance of the amounts owed and when pressed, resorts to her position in the 06 Case that every payment but the five payments previously acknowledged, has been made. I was not persuaded then; I am not persuaded now. The 2006 Case was dismissed in March 2007; Debtor refiled in July 2007. She claims, without reference to any records or even having checked any records, to have made every payment since the 2006 Case was commenced. For this to be true Chase would have had to suspend industry practice. The loan was in foreclosure during the hiatus between the 06 Case and the present one; even if Debtor tendered payment during this at least four month period, mortgagees simply do not accept mortgage payments when the loan is in foreclosure. A five month arrearage is simply not believable.

In Patton I, I noted the familiar strategy employed by some debtors of lodging vague and generalized claim objections which rely for their success on the reluctance of creditors to spend the time and money to present witnesses to establish their claims.[11] If the Debtor can present enough credible evidence to refute at least one of the allegations that is essential

---

[11] I recently addressed this same tension in In re Kincaid, __ B.R. __, No. 07-15890 (Bank. E.D. Pa June 2, 2008), where generalized objections to credit card claims were at issue.

to the claim's legal sufficiency, the evidentiary burdens will shift. Where the creditor makes no effort to explain or reconcile its claim with the debtor's often sincere confusion about the status of his account, the debtor's nonspecific denial of liability may be sufficient to put the creditor to its proof. However where the creditor endeavors, through the production of account histories, escrow analyses, invoices and other supplemental materials, to establish the bona fides of its claim, self-serving testimony of the Debtor will not shift the burden. Nor will the invocation of evidentiary roadblocks to the discovery of truth.[12] There must be an overarching umbrella of good faith surrounding these contests if the acknowledged goal of proof of claim litigation, i.e., to secure a quick and inexpensive determination of the debtor's obligations, is to be achieved.

Based on the Debtor's evidence I find that the presumption of *prima facie* validity which obtains where a claim is filed in accordance with Bankruptcy Rule 3001(c) has not been rebutted to shift the burden to Chase to prove the amount of missed payments. Simply saying "I don't know, I don't understand" is insufficient when the claimant has provided the detail to enable a meaningful inquiry as here and the debtor refuses to undertake it. Needless to say, had the debtor come up with a substantive objection, the burden would have shifted and Chase would have had to prove the payment history through admissible evidence. So there is no confusion I am not considering the payment history for the truth of its contents; rather I have concluded that Chase's proof of claim has

---

[12] The one attempted here is an example. Chase produced the payment history to debtor's counsel. Rather than refer to it to reconcile the claim, Debtor's counsel simply sought to exclude it as being impermissible hearsay in the absence of a witness who could gain its admittance.

not been challenged on this record. Had Chase not supplied the means for the Debtor to frame a substantive objection, a different result may have obtained. Hopefully with the guidance of this decision, these types of contested matters will be discontinued and sincere efforts will be made to resolving bankruptcy claims.[13]

    <u>Accrued late charges and escrow shortage</u> - Debtor's challenge to the foregoing is to question whether they are owed and to state that "they are unclear and appear excessive," the latter being the mantra he recites with respect to each charge itemized. In the 2006 Case I allowed late charges of $648.96 because the Debtor had not challenged them. Late charges in this case have increased to $767.64 but Chase fails to provide any basis for that number. While there were additional and acknowledged late charges,[14] I cannot quantify this component of the claim and will not allow the unsubstantiated increment which Chase could have easily explained in its summary statement. Likewise there is no support for the escrow shortage and it will not be allowed.

    <u>Costs</u> - The attachment to the proof of claim lists 31 different charges with detail to clarify the nature of the cost. In response to the Request, Chase produced the invoices that PH&S sent to Chase seeking reimbursement for the expenditures. Debtor made no effort to review this support against the attachment and to specifically challenge any charge, other than the erroneous contention about the number of sheriff's sales. Rather each charge

---

[13] I have commented before that while these contests manage to buy time, ultimately the debtor has to pay the piper since liens are not discharged in bankruptcy. In short, this strategy is not only burdensome on creditors and the court, it fails to assist a debtor's rehabilitation and at best gives him false hope.

[14] Morris stated that it is her practice to include the late charge with her untimely mortgage payment.

was refuted as "not clearly itemized, unclear and highly excessive." To the extent that blanket objection is sufficient to interpose an objection (and it is questionable as to many of the routine and established costs of the state and bankruptcy collection process), it certainly will not succeed when the creditor has produced detailed dated attorney invoices that evidence the costs as they accrued contemporaneously with the remedies employed in the collection process.

While Debtor did not bother, I verified the invoices against the proof of claim attachment. With the exception of two entries marked "referral-POC" and "referral-MFR," I found that Chase had been billed by counsel for the items charged on the proof of claim. Since Debtor does not state that the costs were not incurred but rather that they were not itemized, and are unclear and highly excessive, I will suggest that had he or his delegate Morris (or counsel who prepared the rote pleading) taken the time for this review, they would have been hard pressed to complain that the items were not itemized or were unclear. As to the excessive nature of <u>all</u> the charges, I respectfully disagree.[15] I am satisfied that the costs appear customary and reasonable.[16] Otherwise it is not the Court's task to conduct an independent review of each charge where no substantive objection is presented. Again Debtor was given the information necessary to mount a specific challenge to any charge but failed to do so. His broad brush approach is simply not sufficient to require

---

[15] One must question the good faith basis for contending a charge of $150 as the filing fee of a motion for relief is "not itemized, unclear and excessive" when it is the statutory charge imposed by the Judicial Conference.

[16] An exception is the $25 "players national locator" which, absent some explanation, I will not let that stand.

Chase to do more. Thus, I will allow all the charges other than the aforementioned "referral" charges of $200 and the $25 players locator fee.

Based on the foregoing I find that Chase's Arrears Claim is $34,975.89.[17]

B. <u>Dismissal Motion</u>

The Chapter 13 plan is funded for payment of $37,987.50 and contemplates payment of attorneys' fees of $2,024,the secured claims of PHFA (filed in the amount of $3,400 and not objected to) and Caln (filed in the amount of $538.09 and not objected to) plus the Trustee 7.37 % statutory commission (<u>i.e.</u>, approximately $2,800), The Chase Arrears Claim, when added to the other recognized claims and the commission, renders the Chapter 13 plan infeasible. It appears that the Trustee's objection is well taken.

Having so concluded, I need not necessarily dismiss the case as requested if I find that the filing of a feasible plan is not foreclosed. A bankruptcy court has considerable discretion in determining whether "cause" exists and whether dismissal is the appropriate remedy. <u>E.g.</u>, <u>In re Orawsky</u>, --- B.R. ----, 2008 WL 1931207, at * 4 and n.15 (Bank. E.D. Pa. May 2, 2008) (*citing* cases). <u>See also</u> <u>In re Henry</u>, 368 B.R. 696, 699 (N.D. Ill. 2007). Given Debtor's performance to date in this case, I find there is reason to let him attempt to do so. He has timely made every $600 plan payment given his acceptance of the condition that a wage order be imposed. He also appears to be making his mortgage payments, albeit on his own schedule. Whether there is any room in his budget to increase the payment from his wages was not addressed at the hearing. His Schedule I and recently amended Schedule J

---

[17] I have subtracted $200 (referrals), $25 (players national locator), $172.95 (escrow shortage) and $118.68 (unsupported late charge increment).

-11-

do not support an increase. Nonetheless, as the Trustee has not sought dismissal with prejudice, it seems prudent with Chase's claim now liquidated, to allow him a final chance to save his home. Accordingly, I will deny the Dismissal Motion on the condition that Debtor amends his Chapter 13 plan to pay the Chase claim as found herein plus other necessary claims and the Trustee's commission. The new payment will be supported by an amended wage order to be implemented immediately.[18]

An Order consistent with this Opinion shall be entered.

*Diane W. Sigmund*

_____
DIANE WEISS SIGMUND
U. S. Bankruptcy Judge

Dated: June 6, 2008

---

[18] So it is clear to the Debtor should he seek to appeal this Order, the conditions of the continuation of the case shall be implemented by the dates provided or the case will be dismissed with prejudice. After three back to back cases over three years, Debtor is being given a last opportunity to succeed in Chapter 13.

-12-