UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                    :        Chapter 13

KENNETH L. PATTON                                        :

       Debtor                                       :        Bankruptcy No. 07-13996bf

.................................................

STATEMENT OF REASONS IN SUPPORT OF ORDER

.................................................

AND NOW, upon consideration of the motion of the former debtor,

Kenneth L. Patton, for leave to file another chapter 13 bankruptcy case,

And upon consideration of the opposition thereto filed by the standing

chapter 13 trustee, William C. Miller, Esq., and by secured creditor Chase Home Finance,

LLC,

And after an emergency evidentiary hearing,[1]

And the debtor needs permission from this court to file what would be his

fourth chapter 13 petition since 2005 because on January 20, 2009 his third bankruptcy

case was dismissed with a bar against future bankruptcy filings without further leave of

court,

And leave to file another chapter 13 case is an issue committed to court

discretion, and should only be granted where the proposed additional bankruptcy filing

would be in good faith.  See, e.g., Haines v. Miller, 2004 WL 1987218 (E.D. Pa. 2004).

---

[1]The debtor filed his motion on March 23, 2009, and asserted that there was a foreclosure sale of his residence set for April 16th, thus necessitating a hearing on less than normal notice.  At the hearing, though, the parties informed me that the foreclosure sale had been relisted for mid-May 2009.

Demonstration of good faith requires the former debtor to prove that there has arisen a

substantial change in material circumstances rendering it likely that the debtor can now

successfully reorganize under chapter 13,

> As I observed in In re Lee, 2007 WL 1650577 (Bankr. E.D. Pa. 2007):
>
> [W]hile the Bankruptcy Code does not contain any express
> limitation on refiling a bankruptcy case after another is
> dismissed, many courts have recognized that it is
> inappropriate for a debtor to file another bankruptcy
> reorganization case (under chapters 11, 12 or 13) after
> dismissal of an earlier one for non-performance, unless there
> has been a material change of circumstances which
> demonstrates that the second (or later) reorganization attempt
> now has a possibility of success after the first had failed.  See
> Haines v. Miller, 2004 WL 1987218, at *3; see generally, e.g.,
> Matter of Elmwood Development Co., 964 F.2d 508 (5th Cir.
> 1992); In re Chisum, 847 F.2d 597 (9th Cir.), cert. denied sub
> nom., Mortgage Mart, Inc. v. Rechnitzer, 488 U.S. 892,    . . .
> (1988); In re Johnson, 708 F.2d 865 (2d Cir.1983); In re
> Oglesby, 158 B.R. 602, 606 (Bankr. E.D. Pa. 1993) ("A
> genuine change in circumstances may justify a debtor's
> multiple filings"); In re McKissie, 103 B.R. 189, 192 (Bankr.
> N.D. Ill. 1989).  Therefore, when there are successive
> reorganization bankruptcy filings without any material
> changes in circumstances, the repeat filing is generally viewed
> to be in "bad faith."  E.g., Matter of Elmwood Development
> Co., 964 F.2d at 511-12; Haines v. Miller, 2004 WL 1987218,
> at *3; compare In re Barrett, 964 F.2d 588, 592 (6th Cir.
> 1992) (change in circumstances made the debtor's successful
> reorganization extremely likely and the filing undertaken in
> good faith).  Since the first filing has been unsuccessful, there
> is little reason for a debtor to believe that the second will yield
> any different result.  See In re Oglesby, 158 B.R. at 606 ("The
> bankruptcy court must concern itself with whether the debtor
> is merely trying to frustrate the statutory requirements through
> a strategy of successive filings in an attempt to abuse the
> bankruptcy process.").
>
> Indeed, serial or successive bankruptcy filings may be
> evidence of misuse of the bankruptcy process, intended only
> to forestall the foreclosure efforts of a secured creditor, and,
> therefore, not filed in good faith.  See, e.g., In re Huerta, 137
> B.R. 356, 367 (Bankr. C.D. Cal. 1992).  The "kind of

2

'changed circumstances' required to justify a successive filing must be positive changes" reflecting on the debtor's ability to successfully reorganize under chapter 13. <u>Id.</u> at 368. Moreover, when an individual has filed many failed reorganization cases, as in this instance, the evidence needed to demonstrate a material change in circumstances supporting a reasonable possibility of reorganization grows heavier. <u>See In re LeGree</u>, 285 B.R. 615, 620 (Bankr. E.D. Pa. 2002). Typically, the mortgage delinquency—threatened foreclosure is the typical reason for the chapter 13 bankruptcy filings—has increased with each unsuccessful effort, due to continued missed payments and additional execution costs and fees. Moreover, the serial filer may have abused the system with prior bad-faith filings and that conduct must be considered as part of the totality of the circumstances. <u>See id.</u>

In determining whether bad faith filing exists, the bankruptcy court has the discretion to reach the appropriate result in a particular case based upon all of the circumstances. <u>See In re Lilley</u>, 91 F.3d at 496; <u>Matter of Love</u>, 957 F.2d 1350, 1354 (7th Cir. 1992); <u>Haines v. Miller</u>, 2004 WL 1987218, at * 3; <u>In re Mazzocone</u>, 180 B.R. 782 (E.D. Pa. 1995). Similarly, the decision whether to grant relief under Rule 60(b)(5) is also committed to court discretion. <u>See generally</u> <u>Agostini v. Felton</u>, 521 U.S. 203, 238, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997); <u>Prudential Ins. Co. of America v. National Park Medical Center, Inc.</u>, 413 F.3d 897, 903 (8th Cir. 2005).

<u>Id.</u>, at *6-*7 (citations omitted),

And, moreover,

[a]lthough a bankruptcy court has the general power to modify previously issued injunctions . . . , the exercise of that equitable power must also give consideration to interests of finality embodied in res judicata. <u>See generally</u> <u>In re Crofford</u>, 277 B.R. 109, 113 (B.A.P. 8th Cir. 2002) ("Rule 60 is not available to rehash matters already decided nor to advance new legal theories which could have been raised in the original motion; rather it is available only where one of the grounds set forth in the rule is established."). This is accomplished by recognizing that the party seeking relief has the burden of persuasion, and that there has been a substantial change in circumstances, either factually or legally, that justifies relief.

3

<u>Id.</u>, at *7,

And therefore Mr. Patton has the burden of meeting this standard of

material changed circumstances, made more difficult owing to his three previous

unsuccessful filings.  <u>See generally</u> <u>In re Mullock</u>, No. 08-16903, <u>slip op.</u> (Bankr. E.D.

Pa. April 14, 2009) (Frank, B.J.):

> Finally, I cannot ignore this case's historical context.  Were
> this the Debtor's first attempt at reorganization, I might accept
> more easily the Debtor's very optimistic income projections at
> this early stage of the case, particularly in the absence of a
> vigorous challenge to their reliability by Emigrant.  However,
> the proposition that the debtor need not make a detailed
> showing regarding plan feasibility in defending a § 362(d)(2)
> motion prior to confirmation has less force when there was a
> prior failed reorganization attempt.  <u>See</u> <u>In re Elliott-Cook</u>,
> 357 B.R. 811, 815 (Bankr. N.D. Cal. 2006) (cited in <u>In re</u>
> <u>Ferguson</u>, 376 B.R. 109, 121 (Bankr. E.D. Pa. 2007))
> (observing that the court must consider why prior
> reorganization effort(s) failed and what has changed to make
> present effort likely to succeed).  If there has been a long
> history of financial default and one or more prior failed
> reorganization attempts, "the evidence needed to demonstrate
> a material change in circumstances supporting a reasonable
> possibility of reorganization grows heavier."  <u>In re Dawson</u>,
> 2007 WL 4190772, at *3 (Bankr. E.D. Pa. Nov. 20, 2007).

<u>Id.</u>, at 14-15 (footnotes omitted),

And leave to refile should not be granted where the former debtor intends

primarily to relitigate issues previously decided,

And before considering the evidence presented, I note that Mr. Patton

challenges the validity of the bankruptcy court order entered on January 20, 2009, which

order barred him from filing future cases without obtaining prior court approval,

And to the extent that Mr. Patton has not waived any challenge to the

validity of the January 20th bar order by failing to appeal from that order, the power of a

bankruptcy court to prohibit future filings in appropriate circumstances has been upheld

by numerous courts for many years.  See, e.g. In re Casse, 198 F.3d 327 (2d Cir. 1999); In

re Sweet, 2006 WL 1548622 (D.R.I. 2006); Haines v. Miller, 2004 WL 1987218 (E.D.

Pa. 2004); In re Callahan, 2004 WL 350753, at *4 (E.D. Pa. 2004); In re Hamer, 2000

WL 1230496 (E.D. Pa. 2000); In re Narod, 138 B.R. 478, 484 (E.D. Pa. 1992); In re Lee,

2007 WL 1650577, at *2-*3.  Thus, the January 20th bar order is enforceable and Mr.

Patton must obtain leave of this court to refile further chapter 13 petitions,

   And Mr. Patton owns real property located at 209 Katherine Lane,

Coatesville, Pennsylvania.  The first mortgage is held by Chase Home Finance, LLC.

There are two other mortgage liens on this realty.  And Mr. Patton asserts that there is no

equity in the property.  Ex. D-3 (Draft Schedule D),

   And, as previously mentioned, Mr. Patton has commenced three

unsuccessful chapter 13 reorganization cases.  His first case was filed (jointly with

Brenda Morris[2]) on March 24, 2005, and docketed at Bankr. No. 05-13986.[3]  On

December 1, 2005, this case was dismissed upon motion of the chapter 13 trustee.  Prior

to dismissal, Chase sought to terminate the bankruptcy stay, which motion was settled by

stipulation.  See docket entry #28.  Apparently, Mr. Patton was unable to comply with the

---

   [2]Section 302 restricts the filing of joint cases to individuals who are spouses.  Ms.
Morris testified that she has never been married to Mr. Patton.

   [3]I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy
cases by Fed. R. Bankr. P. 9017), of the docket entries of Mr. Patton's prior cases.  See Maritime
Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi,
1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D.
Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

terms of his agreement with Chase, as the mortgagee later was granted relief from the

bankruptcy stay,

And on April 19, 2006, Mr. Patton filed his second chapter 13 petition,

docketed at Bankr. No. 06-11590,[4]

And Mr. Patton sought and was granted an order providing that his trustee

payments were to be paid by his employer directly from his wages.  See docket entries

##23, 26,

And Chase filed an objection to confirmation of Mr. Patton's proposed

chapter 13 plan.  See docket entry #34.  The chapter 13 trustee filed a motion to dismiss

this case.  See docket entry #38.  Mr. Patton then filed an objection to Chase's proof of

claim.  See docket entry #50,

And all three contested matters—i.e., Chase's objection to confirmation;

Mr. Patton's objection to Chase's secured proof of claim; and the trustee's motion to

dismiss the chapter 13 case—were decided by Bankruptcy Judge Diane W. Sigmund in a

memorandum opinion dated March 16, 2007.  In re Patton, 2007 WL 853742 (Bankr.

E.D. Pa. 2007),

And it is apparent from this decision that Mr. Patton had submitted a

chapter 13 plan for approval that proposed, inter alia, to cure the pre-bankruptcy mortgage

arrearage owed to Chase while maintaining regular monthly mortgage payments post-

bankruptcy.  See 11 U.S.C. § 1322(b)(5); Sapos v. Provident Inst. of Sav., 967 F.2d 918,

926 (3d Cir. 1992).  Mr. Patton's claim objection was that Chase had overstated its

---

[4]Ms. Morris did not join in this second petition or the third petition.

arrearage claim. Chase's confirmation objection was that Mr. Patton's proposed plan did

not provide for the prepetition arrearages to be paid in full,

And in that March 2007 memorandum opinion, Judge Sigmund reviewed

the evidence presented and found that Chase had understated the arrearage amount in its

secured proof of claim filed in Mr. Patton's first bankruptcy case in 2005 and thus that

earlier filing did not support Mr. Patton's challenge to Chase's arrearage claim in the

second bankruptcy case. In re Patton, 2007 WL 853742, at *3. She also found that Mr.

Patton acknowledged that he was five monthly payments in arrears. Id., at *4. The

bankruptcy court overruled Mr. Patton's objection to certain costs and fees asserted by the

mortgagee, and found it unnecessary to determine whether Chase had proven that more

than five monthly mortgage payments were delinquent at the time the second bankruptcy

case commenced in April 2006:

> Costs of $4,630.63 are allowed as part of the Arrears Claim.
> When added to unchallenged accrued late charges and the
> escrow shortage plus the five admitted mortgage payments
> equaling at least $6,127.80, the Arrears Claim is at least
> $11,580.34. Because as noted below, an allowed claim of
> even this amount is beyond the reach of the Debtor, I need not
> struggle with the evidence to determine whether Chase has
> met its burden of proving any additional missed payments
> beyond the five admitted by Debtor.

Id., at *4 (footnote omitted),

And during the evidentiary hearing on Mr. Patton's objection to Chase's

proof of claim, Mr. Patton was unable to present documentary evidence—e.g., cancelled

checks, money order receipts—corroborating his assertion that he was delinquent for only

five prepetition monthly mortgage payments. Given the conclusion that Mr. Patton could

not reorganize even if he were only five months in arrears in mortgage payments to

Chase, Judge Sigmund found that she need not resolve in her March 2007 memorandum opinion whether Chase would have met its evidentiary burden of proving that more than five monthly mortgage payments were past due,

And in the March 2007 memorandum opinion Judge Sigmund granted the trustee's motion to dismiss this second bankruptcy case, holding that Mr. Patton had insufficient net income to reorganize under section 1322(b)(5) because he could not afford to cure his mortgage arrearage with Chase, as this petition arrearage was not less than $11,580.34. Id., at *5,

And the March 2007 memorandum opinion concluded as follows:

> This is Debtor's second case. He has been under bankruptcy protection all but a few months for two years and is no closer to having a confirmed plan today than he was in the Prior Case. He has been accorded time to challenge Chase's claim but it is simply too large, even under the favorable terms of his testimony on the Objection, and his income too small. There is no justification for permitting a further plan which would serve no purpose but delay the inevitable to the prejudice of creditors. Accordingly, the Dismissal Motion is granted.

Id., at *6,

And on March 26, 2007, Mr. Patton filed a motion to vacate the March 16th dismissal order pursuant to Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59). See docket entry #79. That motion to vacate was opposed by Chase, docket entry #81, and ultimately denied by the court on May 2, 2007, after consideration of any purported new evidence. See docket entry #84,

And no appeal was taken from this order. Instead, about two months later, Mr. Patton filed the above-captioned third chapter 13 case on July 11, 2007,

8

And in this third chapter 13 case, Mr. Patton once again attempted to reorganize by curing his mortgage delinquency to Chase and, in so doing, renewed his challenge to Chase's secured prepetition arrearage claim,

And Judge Sigmund again approved Mr. Patton's request to have his monthly plan payments deducted from his wages by his employer and sent directly to the trustee.  See docket entry #43,

And Chase again asserted that it was entitled to relief from the bankruptcy stay.  Mr. Patton and Chase then entered into another settlement stipulation.  See docket entries ##61, 63.  Chase later asserted that Mr. Patton was not in compliance with this stipulation and demanded relief from the bankruptcy stay.  Mr. Patton opposed that relief,

And on December 26, 2007, the chapter 13 trustee filed a motion to dismiss this case, with a bar against future bankruptcy filings.  See docket entry #70,

And Mr. Patton filed an objection to Chase's proof of claim.  See docket entry #75; ex. D-2,

And Judge Sigmund held another evidentiary hearing to consider the trustee's motion to dismiss the case, Mr. Patton's objection to Chase's proof of claim, and Chase's demand for relief from the bankruptcy stay.  See docket entries ##100-02,

And by memorandum and order dated June 6, 2008, the court held that Chase held an arrearage claim in the amount of $34,975.89.  In re Patton, 388 B.R. 629, 636 (Bankr. E.D. Pa. 2008).  In evaluating the evidence, Judge Sigmund noted that the issues were the same as those posed by Mr. Patton's objection in his second bankruptcy case:

> Debtor's objection takes the same form it did in the last case:
> he questions whether all payments have been credited, and

9

> how the arrears could have grown since the last case when he
> has allegedly made all payments, and in the most general
> terms challenges all the costs as either excessive or not
> adequately itemized.  Exhibit D-2.  Once again attached to
> Chase's proof of claim is a categorical break down of the
> payment arrears, late charges and costs.  However, somewhat
> more helpful this time around is Debtor's Request for
> Production of Documents, Exhibit D-8, to which Chase filed a
> Response attaching various invoices from Chase's bankruptcy
> counsel, Phelan Hallinan & Schmieg ("PH & S"), and a
> promise to supply the requested payment history which indeed
> soon followed.

Id., at 632-33.  Chase sought to admit in evidence business records reflecting Mr. Patton's

payment history on his mortgage account, but the documents were not admitted for their

truth as they were not authenticated by a witness.  Rather, they were admitted "as

evidence that Chase had complied with Debtor's counsel's document demand and for the

purpose of establishing that support for Chase's contentions about payment arrears had

been provided to Debtor."  Id., at 633 n.9,

And during this consolidated evidentiary hearing, Mr. Patton again did not

offer documentary corroboration, such as cancelled checks, for his assertion that Chase

had failed to credit him with all funds received and that he was only five months in

arrears.  Id., at 634:

> Upon review of the payment history produced by Chase,
> updated as of February 20, 2008, I note it contains a schedule
> from the initial payment on December 11, 1998 through the
> date of its preparation on February 20, 2008.  In addition to
> the actual date and amount of payments received, it also
> reflects the contractual date paid.  By setting forth the dates
> actual payments were made as well as the date they were
> applied, the history is reconcilable to the Debtor's own
> payment records.  This presentation obviates the
> understandable confusion from notices of default that claim
> current payments were not made when the debtor knows he
> wrote a check and fails to understand that it was applied to a
> prior month in arrears.

10

Neither Debtor, Morris nor counsel has made any effort to reconcile this document with Debtor's own records. When questioned, Morris stated that she was aware of it but had not reviewed it. As the handler of the couple's finances, she maintains her ignorance of the amounts owed and when pressed, resorts to her position in the 06 Case that every payment but the five payments previously acknowledged, has been made. I was not persuaded then; I am not persuaded now. The 2006 Case was dismissed in March 2007; Debtor refiled in July 2007. She claims, without reference to any records or even having checked any records, to have made every payment since the 2006 Case was commenced. For this to be true Chase would have had to suspend industry practice. The loan was in foreclosure during the hiatus between the 06 Case and the present one; even if Debtor tendered payment during this at least four month period, mortgagees simply do not accept mortgage payments when the loan is in foreclosure. A five month arrearage is simply not believable.

And in her June 6, 2008 ruling, Judge Sigmund denied the trustee's dismissal motion and granted Mr. Patton one more opportunity to seek confirmation of an amended chapter 13 plan that would repay Chase's arrearage claim in full. Id., at 636-37. Judge Sigmund stated: "Debtor is being given a last opportunity to succeed in Chapter 13." Id., at 637 n.18,

And also on June 6, 2008, Chase was granted relief from the bankruptcy stay as the court determined that Mr. Patton was in default of the latest stipulation with the mortgagee. Id., at 637,

And on June 16, 2008, Mr. Patton filed a third amended chapter 13 plan. He also filed a notice of appeal to the district court from the June 6th order that granted Chase relief from the bankruptcy stay and that fixed its arrearage claim. See docket entry #114,

And Mr. Patton filed amended schedules of his monthly income (Schedule I) and expenses (Schedule J) in June 2008. See docket entries ##110, 111,

11

And on June 18, 2008, the court approved an amended wage deduction order.  See docket entry #118,

And after filing his appeal from the June 2008 ruling, Mr. Patton filed three separate "motion[s] to reinstate the automatic stay."  These motions were opposed by Chase and denied by Judge Sigmund on July 15, 2008, October 14, 2008, and January 13, 2009 respectively,

And in response to Chase's opposition to his third amended plan, Mr. Patton filed a fourth amended plan.  See docket entry #141.  The court also approved yet another amended wage deduction order.  See docket entry #147.  Chase also objected to the proposed fourth amended plan.  See docket entry #142,

And the chapter 13 trustee filed a motion to dismiss with prejudice on November 20, 2008.  See docket entry #162,

And on January 20, 2009, Judge Sigmund entered a memorandum and order granting the trustee's motion to dismiss.  In re Patton, 2009 WL 136817 (Bankr. E.D. Pa. 2009).  In addition to summarizing the lengthy bankruptcy history involving Mr. Patton and his disputes with Chase, she noted certain issues that arose after her June 2008 memorandum and order:

> Debtor subsequently filed a Third, then Fourth Amended Plan which elicited objections from Chase.  He also filed a motion to reinstate the stay which was denied because of the pending appeal of the stay relief order.  After withdrawing the appeal, a second motion to reinstate the stay was filed.  It was denied on November 13, 2008 after the Debtor failed to appear for three consecutive listings of the motion on October 7, 2007, October 14, 2007 and finally November 13, 2007.  Exhibit T-3.  On November 17, 2008 Debtor's counsel David A. Scholl, Esquire ("Scholl") filed a motion to withdraw as Debtor's counsel, averring that Debtor failed and refuse[d] to communicate with him and to appear at the October 14 and

12

November 13 hearings despite counsel's direction that he do
so.  Exhibit T-5.  Scholl further averred that there was good
cause for his withdrawal because Debtor had failed to fulfill
his obligation to appear notwithstanding his reasonable and
repeated warnings that he would withdraw if his lack of
response continued.  Id.[5]

Id., at *1.  Judge Sigmund then stated the trustee's position concerning dismissal:

The Trustee contends this case should be dismissed for bad
faith as there has been no material change in Debtor's
financial circumstances to warrant the filing of this case on
the heels of the prior case dismissal.  The Trustee points to the
considerable opportunities Debtor has had to prosecute this
case, including three unsuccessful motions to reinstate the
automatic stay as to Chase and nine continued confirmation
hearings over the sixteen month pendency of this petition.
This, he argues, evidences unreasonable delay that is
prejudicial to creditors which is cause for dismissal under §
1307(c)(1).  I agree.

Id., at *2.  Finally, Judge Sigmund concluded:

By reason of his failure to appear at the last four scheduled
hearings and his inaccessibility to his attorney, it would
appear that Debtor has abandoned the pursuit of this
bankruptcy.  Moreover, it appears from the Answer filed by
his counsel that he has no defense to the dismissal and is
essentially seeking to preserve his ability to file a fourth case
to stop the inevitable sheriff's sale.

***

. . . This case was filed without a reorganizational purpose
since the Debtor is admittedly incapable of satisfying arrears
under his mortgage and maintaining current mortgage
payments.  He has secured protection of the bankruptcy court
against adverse state court action by the Bank for almost four
years.  He has litigated to judgment his objections to the
Bank's secured claim.  When his prior case was dismissed, he
simply filed again without any change in circumstances.  In
this case alone, he has lodged six Chapter 13 plans and had
nine hearings seeking confirmation of one or the other.  In

_____

[5]Although not all of the dates recited in the opinion match those on the docket, the
general history of the case is accurate.

13

> short, he has had every opportunity to reorganize in
> bankruptcy and cannot do so.
>
> ***
>
> I will grant the Trustee's Motion in its entirety.  The dismissal
> will be with prejudice and provide that no further bankruptcy
> cases may be filed without leave of Court.  Should a material
> change in the Debtor's situation occur, Debtor may seek
> permission to commence a new case but there shall be no
> future petitions entertained for the sole purpose of obstructing
> Chase.

Id., at *3, *4 (footnote omitted),

And Mr. Patton did not file any appeal from the order dismissing his third

bankruptcy case with prejudice,

And on January 30, 2009, unaware that the underlying bankruptcy case had

been dismissed, see generally In re Pattullo, 271 F.3d 898 (9th Cir. 2001) (dismissal of

chapter 13 case renders moot the debtor's appeal); In re Ezekoye, 185 Fed. Appx. 181,

183 (3d Cir. 2006) (same) (non-precedential), the district court issued an order affirming

in part and vacating in part Judge Sigmund's June 6, 2008 order, docketed at No. 2:08-cv-

03283.  See ex. D-1,[6]

And the district court upheld the bankruptcy court's determination

overruling Mr. Patton's objections to the costs and fees portion of Chase's arrearage

claim.  District court order, at 7, 8,

---

[6]Although not on the docket of this court, the January 30th district court order, at
2, refers to an earlier order entered on September 9, 2008, which earlier order granted Mr.
Patton's request to withdraw his appeal from that portion of the June 6th order that granted Chase
relief from the bankruptcy stay.  Judge Sigmund makes reference to this withdrawal in her
January 20th memorandum, suggesting that the withdrawal was strategic: undertaken so that Mr.
Patton could prosecute his motions seeking to "reinstate the automatic stay." In re Patton, 2009
WL 136817, at *1 n.3 ("Debtor appealed the Order granting relief from stay but withdrew that
appeal in order to pursue a motion to reinstate the stay.").

And the district court vacated and remanded for further proceedings the

bankruptcy court's determination regarding that portion of the Chase arrearage claim that

concerned the number of missed monthly payments.  The district court stated:

> Because we find that the Bankruptcy Court improperly used
> Appellee Chase's prepetition payment history to heighten the
> evidence necessary for Appellant Patton to overcome the
> prima facie effect of the proof of claim's arrears section, the
> judgment of the Bankruptcy Court with respect to the validity
> and amount of the arrears listed in Appellee Chase's proof of
> claim is VACATED.

District court order, at 7,

And thus the district court did not agree with Mr. Patton that he was only

five months in arrears on mortgage payments to Chase at the time his third chapter 13 case

commenced in July 2007.  But it reasoned that, as the bankruptcy court had held Chase's

documents showing the payment history on Mr. Patton's account were admissible solely

"as evidence that Chase had complied with Debtor's counsel's document demand and for

the purpose of establishing that support for Chase's contentions about payment arrears had

been provided to Debtor," In re Patton, 388 B.R. at 633 n.9, and not for the truth of their

factual assertions, January 30th Order, at 5, it was inappropriate for the bankruptcy court

to use those documents to shift an evidentiary burden to Mr. Patton,

And in seeking leave to file a fourth chapter 13 petition, Mr. Patton has

offered draft copies of the bankruptcy schedules, chapter 13 plan and other documents that

he would file if permitted to do so.  See ex. D-3,

And draft Schedule J reveals monthly expenses totaling $3,067 for Mr.

Patton and Ms. Morris.  Draft Schedule I reveals total income in the amount of $3,700 per

15

month.  Mr. Patton is currently receiving disability insurance and Ms. Morris is unemployed and receiving unemployment compensation.  Ex. D-3,

And Ms. Morris testified that the combined income of Mr. Patton and herself is less than their combined income in June 2008 during the third bankruptcy case.  She also conceded that Mr. Patton had not made mortgage payments to Chase since May 2008.[7]  Furthermore, Chase has incurred the costs associated with another scheduled foreclosure sale,

And if granted leave to file another chapter 13 petition, Mr. Patton would propose a chapter 13 plan that would require him to pay to the trustee $7,500 on June 1, 2009,[8] plus monthly payments of $600 per month for 60 months, totaling $43,500.  From these funds, the trustee would make distribution on the arrearage claims of Chase, plus pay the trustee's commission, debtor's counsel fees, and (if anything remains) unsecured creditors, pro rata.  See ex. D-3,[9]

---

[7]Chase argues that March 2008 is more accurate.

[8]This lump sum represents the remaining balance of more than $10,000 repaid to Mr. Patton by the chapter 13 trustee when his third bankruptcy case was dismissed without any plan being confirmed.  See 11 U.S.C. § 1326(a)(2).

[9]Mr. Patton asserts that he would be a "below median" debtor on his draft Form 22C.  If accurate, section 1322(d)(2) would limit the length of any chapter 13 plan to 36 months unless cause is demonstrated.  Despite his numerous prior bankruptcy cases, Mr. Patton assumes that he will be able to demonstrate the requisite cause.  But see In re Bradley, 2008 WL 4065810, at *7 n.11 (Bankr. E.D. Pa. 2008).  If such relief were granted, Mr. Patton's plan would conclude in 2014, about 9 years after his first case began.

16

And given the amounts due to the trustee and debtor's counsel, the amount proposed to be paid to Chase under Mr. Patton's draft plan is approximately $37,500,[10]

And Mr. Patton intends that any trustee payments and postpetition mortgage payments in a fourth bankruptcy case will be tendered via a proposed "wage deduction order."   Ex. D-4,

And Mr. Patton contends that there are two material changed circumstances that distinguish this proposed fourth chapter 13 bankruptcy filing from the earlier three cases: his "willingness to submit a wage order to cover all of the payments" due under his proposed plan, Patton Memorandum, at 7; and the district court January 30, 2009 order vacating the June 2008 ruling concerning his objection to Chase's arrearage claim.   These changes, he maintains, now render his ability to reorganize under chapter 13 likely.   Patton Memorandum, at 7,

And both the chapter 13 trustee and Chase discount both reasons in their opposing memoranda.   They emphasize that Mr. Patton had numerous chances to reorganize under chapter 13 and failed to do so.   His present financial circumstances are worse than in June 2008—when Judge Sigmund gave him one final chance to confirm a plan.   They also argue that his proffered changed circumstances are illusory,

And for the following reasons I agree with the objectors,

---

[10]Mr. Patton's draft plan does not intend to provide for the second and third liens on the realty.   Plan, ¶4.   Such secured creditors would be entitled to relief from the bankruptcy stay.   See In re James, 255 B.R. 837 (Bankr. M.D. Tenn. 1999); see generally, In re Vincente, 260 B.R. 354, 357-58 (Bankr. E.D. Pa. 2001); In re Waldman, 75 B.R. 1005, 1008 (Bankr. E.D. Pa. 1987) ("Therefore, what we are holding, in essence, is that, when a debtor opts to deal with a creditor 'outside the Plan' and, thus, as if the bankruptcy never existed as to that creditor, the debtor must forebear use of the Code to affect the rights of the secured creditor in any other way.").

And Mr. Patton's regular monthly mortgage payments exceed $1,200.  He concedes that his mortgage arrearage, although he disputes the amount, has increased since July 2007, when his third case began, by about $15,000 (11 missed payments between May 2008 and April 2009, plus typical costs associated with scheduling a sheriff sale: about $2,000).  If, as Chase previously asserted, the mortgage arrearage owed to Chase in the third bankruptcy case was approximately $35,000, the current mortgage arrearage would approximate $50,000—far more than Mr. Patton's draft plan proposes to pay Chase,

And, therefore, Mr. Patton intends a fourth bankruptcy filing to once again object to Chase's anticipated arrearage claim for the same reasons as raised in his second and third cases: that Chase is not given credit for all payments received and its fees and costs should be disallowed,

And to the extent that Mr. Patton regards his latest proposal for a wage attachment as a materially changed circumstance, this proposal to fund his plan through wage deductions is not significantly different than similar wage deductions that were entered or were available to him in his three prior cases.[11]  The sources of payment plan and mortgage payments are essentially the same,

And so Mr. Patton's proffered changed circumstances essentially revolve around the district court's January 30th order, which he contends vindicates his contention that Chase has substantially overstated its mortgage arrearage claim.  In other words, Mr. Patton maintains that he can reorganize in a fourth chapter 13 filing because he will object again to Chase's proof of claim and, relying upon the January 30th district court order, he

---

[11]As the debtor receives disability insurance, his offer of a wage deduction from his employer is unclear.

18

argues that Chase will be unable to meet its evidentiary burden to demonstrate its substantial arrearage claim that exceeds his ability to repay it,

And this argument is unpersuasive for a number of reasons:

1. Mr. Patton offers no persuasive explanation for his failure to appeal from the January 20th dismissal order (nor from the order granting Chase relief from the bankruptcy stay or the orders denying his motions to "reinstate" the stay). Had the dismissal order been reversed on appeal, this court would have held the remand hearing anticipated by the district court on January 30th, at which time Chase and Mr. Patton would have been afforded the opportunity to present additional evidence in support of their respective contentions regarding the arrearage claim,[12]

And therefore a fourth filing has the effect of permitting Mr. Patton to bypass the appellate process and reverse the final orders involving dismissal and lift-stay, as well as giving Mr. Patton yet another hearing on his claim objection,

2. Mr. Patton's proposed plan in a fourth chapter 13 case would again require him to tender regular monthly mortgage payments postpetition to Chase, regardless of the amount of his prepetition arrearage. Yet, in all three prior cases, he has had difficulty tendering those postpetition payments on a timely basis. His reduced combined monthly income supports the trustee's and Chase's argument that he will have continued difficulties in a fourth bankruptcy case,

---

[12]If the district court intended otherwise, it would have simply sustained Mr. Patton's objection to the delinquent monthly payment portion of Chase's proof of claim. See generally In re Bricker, 2008 WL 2727147 (Bankr. N.D.W. Va. 2008) (debtor's summary objection to arrearage claim is equal in evidentiary weight to mortgagee's summary assertion of the amount of the claim).

3. Mr. Patton misconstrues the district court's January 30th decision. It remanded the claims objection dispute owing to its concern that Chase's documents detailing Mr. Patton's payment history, which were inadmissible, were possibly used by the bankruptcy court to increase the evidence needed by Mr. Patton to support his objection. See generally In re Allegheny Intern., Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). But these business records were inadmissible because they were not properly authenticated. At no time during the two hearings on his claim objection did Mr. Patton offer documentary evidence refuting Chase's payment records; nor at the hearing held on the instant motion for leave to refile did his sole witness, Ms. Morris, testify that he had additional evidence that would contradict Chase's payment history statement sent to him in discovery.

4. Mr. Patton does not demonstrate or even suggest, in support of his present motion to file a new case, that he has newly discovered evidence, which, if found credible, would significantly reduce Chase's arrearage claim. His intent in refiling bankruptcy, therefore, as it was during his second and third chapter 13 cases, is to request that his objection be sustained because Chase will not meet its evidentiary burden to prove the amount of its arrearage claim. Again, this is no materially changed circumstance.

5. Furthermore, were Chase to present a witness who can authenticate its payment history records, as its counsel has promised to do if leave to refile is granted, and without documents offered by Mr. Patton demonstrating uncredited payments, Mr. Patton's objection would likely be overruled, as Chase will have met its evidentiary burden. See generally In re Dunbar, 2005 WL 852585 (Bankr. M.D. Fla. 2005). If so,

Chase's arrearage claim will far exceed his proposed plan payments and his financial abilities, and thus render reorganization under section 1322(b)(5) infeasible,

      6.  To the extent that Mr. Patton's likelihood of reorganizing in a fourth case would turn upon whether Chase will undergo the expense of bringing a witness to Philadelphia to testify and authenticate its business records, see In re McKnight, 2005 WL 1313519, at *1 n. 2 (Bankr. E.D. Pa. 2005), this also is not a materially changed circumstance from his prior bankruptcy cases.

      7.  Mr. Patton's insistence upon placing this authentication obligation upon Chase, without any evidence that Chase will be unable to meet its evidentiary burden to demonstrate an arrearage claim well in excess of his proposed plan distribution to Chase, does not meet Mr. Patton's own burden to demonstrate materially changed circumstances that warrant yet a fourth attempt at bankruptcy reorganization.

      Accordingly, an order will be entered denying Mr. Patton's motion for leave to refile a chapter 13 petition.

                         _____
                         BRUCE FOX
               United States Bankruptcy Judge

Dated: April 17, 2009